ROGERS *v.* UNITED STATES (No. 2683)[1]

MANUFACTURES AND MATERIAL—WOOL FABRICS AND MANUFACTURES—FUR-
NITURE COVERING

Woven woolen cloth, made with large tapestry designs, to be cut anywhere between designs according to the size desired for making backs and seats for chairs, sofas, and davenports, bought and sold by the meter and yard, is not chair backs or seats, but is a material to be used for covering the backs and seats of furniture. It is used for more than one purpose; and, within the rule of *United States* v. *Buss*, 5 Ct. Cust. Appls. 110, T. D. 34138, the "identity of the individual article" *is not* "fixed with certainty." The overruling of a protest claiming classification as manufactures of wool (par. 1119, Tariff Act of 1922) against assessment as woven fabrics of wool (par. 1109) is affirmed.

United States Court of Customs Appeals, April 17, 1926

APPEAL from Board of United States General Appraisers, G. A. 9035, T. D. 41115

[Affirmed.]

*Walden & Webster* (*Walter F. Welch* and *Edward F. Jordan* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.

[Oral argument March 18, 1926, by Mr. Welch and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise, described by the appraiser in answer to the protest as "woven upholstery fabrics," weighing more than four ounces per square yard, in chief value of wool, and valued at more than 80 cents per pound but not more than $1.50 per pound, was assessed for duty by the collector at 45 cents per pound upon the wool content thereof and 50 per centum ad valorem under paragraph 1109 of the Tariff Act of 1922, which reads as follows:

PAR. 1109. Woven fabrics, weighing more than four ounces per square yard, wholly or in chief value of wool, valued at not more than 60 cents per pound, 24 cents per pound and 40 per centum ad valorem; valued at more than 60 cents but not more than 80 cents per pound, 37 cents per pound and 50 per centum ad valorem; valued at more than 80 cents but not more than $1.50 per pound, 45 cents per pound upon the wool content thereof and 50 per centum ad valorem; valued at more than $1.50 per pound, 45 cents per pound upon the wool content thereof and 50 per centum ad valorem.

It is claimed by the appellant that the merchandise is properly dutiable at 50 per centum ad valorem under paragraph 1119 of the Tariff Act of 1922, which reads as follows:

PAR. 1119. All manufactures not specially provided for, wholly or in chief value of wool, 50 per centum ad valorem.

---

[1] T. D. 41552.

The merchandise in question was made by a weaving process, and is in chief value of wool. It was imported in running lengths of from thirty to fifty meters. It has large figures so woven in the cloth as to make it adaptable, by cutting between the figures, for chair, sofa, and davenport backs and seats. It is purchased abroad by the meter and sold in the United States by the yard, for upholstery purposes. It is not marked to indicate where it is to be cut and may be cut anywhere between figures, but not through them. One of the witnesses for the importer testified that the merchandise was not marked to indicate where it was to be cut, "for the distinct reason of giving it more uses."

The Board of General Appraisers overruled the protest, and held that it was not necessary to decide whether or not the merchandise was dutiable as woven fabrics in the piece or as separate articles, for the reason that "all woven fabrics [in chief value of wool] are manufactures of wool, while all manufactures of wool are not woven fabrics; consequently the term 'woven fabrics' is more specific than the term 'manufactures of wool' and assuming the merchandise falls within both designations, it must be held dutiable under the former term."

It is claimed by the appellant that the merchandise is dutiable as if cut into separate articles prior to the importation and such articles imported separately. The case of *United States* v. *Buss*, 5 Ct. Cust. Appls. 110, T. D. 34138, is cited by counsel for appellant as authority for this contention.

In that case the court had under consideration narrow, woven cotton strips in running lengths, with cross marks made in the weaving at short intervals to indicate where the merchandise was to be cut in order to produce "coat hangers." The Government claimed that the merchandise was dutiable as tapes composed of cotton, under paragraph 349 of the tariff act of 1909. The importer contended that it was dutiable as a manufacture of cotton not specially provided for, under paragraph 332 of that act. This court held that, where "articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, *only in case the character or identity of the individual articles is fixed with certainty and in case the woven piece in its entirety is not commercially capable of any other use.*" (Italics ours.)

In *Snow's United States Sample Express Co.* v. *United States*, 8 Ct. Cust. Appls. 17, T. D. 37161, cotton cloth so printed as to be capable, by cutting between designs, of being converted into bedspreads, curtains, or table or couch covers, was held to be cotton cloth and not articles, because it was not "*so far advanced that it*

*had an individuality which identified it in its unfinished state as the thing it would be when finished."* (Italics ours.)

Exhibit 1-A represents that portion of the importation used for upholstering the backs of chairs, sofas, and davenports. Exhibit 1-B is used for upholstering the seats of such articles. When used· for upholstering chairs the importation is cut so as to make only one of the figures in the fabric of each exhibit available for use. When it is desired to make the material available for use in upholstering sofas a longer piece of the material is required, usually containing two figures. When used on a davenport, at least three figures are required. It is at once apparent that the imported merchandise has not been so processed as to commit it to a single use. It may be used for at least three separate and distinct uses.

A fabric containing eighteen figures may be cut so as to produce eighteen chair backs, or seats, as the case may be, or it may be cut so as to produce nine sofa backs, or seats, or six davenport backs, or seats. It appears, therefore, that the "identity of the individual article" *is not* "fixed with certainty." The woven fabric may be, and is, commercially used for more than one purpose. The manufacturer deliberately and designedly refrained from marking it for cutting, as stated by one of the witnesses for the appellent, "for the distinct reason of giving it more uses." The importation does not consist of chair backs or seats, but is a material designed to be used for covering the backs and seats of furniture. Accordingly, accepting, for the purposes of this case, the argument advanced by counsel for appellant, that the term "woven fabrics" contained in paragraph 1109, *supra*, is limited to material in the piece, we are forced to the conclusion reached by the trial court that the merchandise in question is *eo nomine* provided for in that paragraph.

The merchandise being specially provided for in paragraph 1109, is not covered by the provision for manufactures of wool not specially provided for, contained in paragraph 1119.

The judgment is *affirmed.*