UNITED STATES v. HAAKER (No. 1130).[1]

MARBLE FIGURE WITH CAPITAL AND BASE.

The importation was a winged figure of a woman, concededly a sculpture, upon a pedestal made of a square shaft with a carved capital and base. The testimony shows that the monument was ordered, designed, and made as an entirety. It was dutiable as an entirety under paragraph 470, tariff act of 1909.

United States Court of Customs Appeals, November 28, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31434 (T. D. 33217).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, of counsel), for the United States.

*Walter Evans Hampton* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal as presented to the court addresses a challenge to a decision of the Board of General Appraisers upon the grounds

---

chiefly that there is no evidence in the record to support it. The merchandise consisted of a monument now erected and standing in a cemetery at Caldwell, N. J., constituted of a winged figure of a woman upon a pedestal made of a square shaft with a carved capital and base. The figure was classified by the collector at the port of New York as "sculptures" within paragraph 470 of the tariff act of 1909, while the pedestal was classified as a manufacture of marble under paragraph 112 of that act. On protest, the Board of General Appraisers sustained the importer upon the theory that the whole should be regarded as an entirety, and the finding from the record that the entire monument was a sculpture as that term is used in paragraph 470. The Government appeals and particularly challenges the sufficiency of the evidence to support the decision. Paragraph 470 requires that—

The term "sculptures" as used in this act shall be understood to include only such as are cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as are the professional production of a sculptor only.

A photograph of the monument as erected accompanies the record, and the board was prompted in a measure to its decision from this representation.

It is urged by the Government in its assault upon the evidence that the board erred in not granting a motion to strike. It may be sufficient to say that the specifications of errors specifically challenge only a single phrase of the testimony which, were it absent, would not materially diminish the record, that portion being substantially given in other parts. Epitomized, the testimony establishes that Miss Haaker, the daughter, and her mother went to and were present at Mr. Barsanti's place in Pisa to order this monument; that they ordered the base and figure together, contracted for them as an entirety; that Mr. Barsanti has artists under him who do this work; that they ordered the work done by one man and understood it was so done, though the witness forgot the artist's name; that they "gave the order to the artist? Yes." This testimony stands unimpeached and is corroborated, we think, as did the board, by the photographs of the monument as erected. The classification of the figure as a sculpture concedes that which characterizes the whole thing—the figure is concededly a sculpture. The measurements, proportions, design, and whole *ensemble* bear striking witness to this truth. The name "Haaker" on the pedestal concludes the question that but a single base was to be made, or at least this base was made in response to a single order and not for general sale. The record indicates, as we think the board concluded therefrom, that the whole monument was designed, ordered, and made as an entirety.

The board reached its conclusion as expressed as follows:

We conclude from the appearance of the monument itself that the pedestal must have been made under the supervision of the one who made the figure and designed with a view to the symmetrical appearance of the whole; in other words, that it must have been intended for the figure. The testimony shows that the whole thing was produced by the same parties, ordered together, and shipped and paid for as a whole. That which is conceded to be sculpture characterizes the monument.

We find no proper basis for excluding the evidence from our consideration and nothing that supports a reversal of the board.

The record is extremely meager and unsatisfactory, but particularly with people like these importers, unaccustomed to the methods and requirements of the customs and the necessities of the situation, importing a single article not for sale or even of advantageous use, without the slightest evidence of fraudulent purpose, the court will be slow to disturb a finding of the board having all the facts and parties before it.

*Affirmed.*